And I gather from this, I hadn't seen the day sheet, but are we going to divide the argument into two of them? Or do you want to argue all at once? Your Honor, I consulted with counsel. I believe that our preference on Mr. Woods' behalf would be that I would argue the appeal and that counsel, Ms. Markey, will argue the SOS petition. Okay, very good. Thank you. May it please the Court, my name is Stephanie Adraktis and I represent the petitioner Rodtravion Woods. Woods' attempted murder conviction and his sentence of 45 years to life in prison are based on the word of a single witness, a man whose account of the charge events has changed repeatedly under oath over time. After the first oral argument in this case, this Court stayed this appeal while Woods exhausted new claims in the State Courts. Those claims and the supporting evidence significantly strengthen the effective assistance of counsel claim that is presented in this appeal. In Balbuena v. Sullivan, this Court held that the District Court may consider a motion to amend a petition to add new claims under Federal Rule of Civil Procedure 15 so long as the original petition is then pending in the District Court. The crucial question for this appeal here is may this Court consider the new claims and evidence solely for the purpose of deciding whether to remand the claim presented in this appeal to the District Court for further proceedings. The answer is yes. This Court held in Gonzales v. Wong at 667 Fed 3rd 965 that it would be unjust for the Court in that case to simply ignore new evidence that substantially strengthened a petitioner's claim. Doesn't that argument all depend, though, on whether or not we grant the motion to file a successive petition? I would argue no, Your Honor, because there's two avenues by which we can do that. What if we don't grant the successive petition? If this Court doesn't grant the request to file a successive petition, there is still an alternative avenue that the Court could provide relief to Mr. Woods, which would be, as I'm suggesting, that the Court were to remand this appeal to the District Court following the opinion in Gonzales v. Wong with instructions to allow Mr. Woods to make a motion to amend his original petition under Federal Rule of Civil Procedure 15. That would obviate the need for him to file a successive petition, at least as to claims that the District Court would find that he could amend his petition to include those claims properly under Rule 15. The standard, the Mayo v. Felix standard under Rule 15, that facts have to be of the same time and type and concern, the same judgment clearly applies here. Mr. Woods's new claims would, we argue, relate back to the originally filed claims, and that would arguably moot his need to file a successive petition in order to raise those claims. So what I'm arguing here is that the Gonzales decision answers the question whether the Court can look at the allegations in the successive petition motion to decide whether fairness and justice require that the Court send the case back to the District Court to give Mr. Woods this one chance to ask the District Court to amend his petition to relate back his new claims to his old claims and add them to the original petition. So could I just follow up? You just said, you just, and maybe I'm reading too much into this, but you said we could look at the allegations in the S.O.S. petition as opposed to what came out at the exhaustion hearing? Your Honor, I think Gonzales, the opinion would allow the Court to look at all that evidence. The exhibits that were submitted with the S.O.S. petition include a transcript of the evidentiary hearing and all the facts that Mr. Woods presented below. And the reason I'm sort of carefully parsing this is because I know that the respondent has argued that under Cullen v. Penholster, the Court in this appeal clearly could not decide the merits of Mr. Woods' appeal based on these new facts that are not part of the record in this appeal and weren't considered by the District Court in connection. However, Gonzales does allow this Court to look at those allegations solely for the purpose of deciding whether fairness and justice require it. Excuse me, forgive me, but you just said allegations again, and I want to really make sure I understand what you're talking about. Do you really mean allegations in the S.O.S.? Or are you sweeping in the record that was developed at the exhaustion hearing? The record as well. Okay. The entire record. And if one looks at the facts in Gonzales, the reason the Court was concerned in that case about the petitioner's opportunity to complete his petition was because he had Brady claims where he did not discover additional evidence that had been withheld from him until after the case had already gone up on appeal. We have a parallel situation here because Mr. Woods was represented by counsel who the State Court found was prejudicially or was, I'm sorry, misspoke, but they found that he was deficient in his representation of Mr. Woods. Counsel was... Let me ask you, do you consider the claims raised in the proposed successive petition to be new claims or just enhancements or revisions of the existing claims? Well, the claim of ineffective assistance of counsel for failure to call the alibi witnesses, I would argue, would be an appropriate amendment to the IAC claim that's before the Court now. Arguably, it's a subclaim. It's not a new claim. It's not a new claim. It's additional evidence to support Mr. Woods' argument that his trial lawyer was prejudicially deficient. So the other claim about false testimony, that is a more, I would say, a more difficult issue in terms of whether or not that was of the same time and type as a claim made in the original petition. But that should be decided by the District Court in the first instance in any event. The most important point here is that the State Court has already decided that Mr. Woods met the first prong of the Strickland Standard. So the only issue really is whether he was prejudiced. And the new claims contain very important information that tends to bolster and strengthen his prejudice argument. And like the fact pattern in Gonzales, it would be in the interest of fairness and justice to consider all of that information in deciding the prejudice issue. So the court How, forgive me, but your time is, and I just, I'm having a real hard time understanding how it is that you think that the, can you give me your best shot at arguing, setting aside the procedural hurdles that you've got to get at this evidence that was adduced at the exhaustion hearing. How is it you think it strengthens your client's habeas petition? The State Court of Appeal found that Mr. Woods was not prejudiced because they said that his alibi was weak and they said that the cell phone evidence that was presented at trial contradicted his alibi. So this new evidence shows that that's not true. His alibi was actually much stronger than what was presented at the trial. Can you explain why? What am I missing? He had three witnesses, Leneka and Lenita Fleming and Derek Smith. Derek Smith, who could have testified at the trial and who would have corroborated and supported his alibi. Can I ask you a question about those three witnesses in particular? In the state exhaustion proceeding, they were not allowed to testify? That's right. And the Superior Court judge thought they had testified at trial. I think it's uncontested they did not testify at trial. Isn't that right? Yes, there was a mistake. Okay. Was it corrected? Did someone call the Superior Court judge's attention to the fact that those witnesses had not testified? Not that I know of, although counsel, I didn't represent Mr. Woods in those proceedings. I believe the judge thought that one of the Fleming sisters had testified, and that's incorrect. Well, she said that she thought all three had testified in her written finding. But at any rate, your best argument on diligence as to those witnesses? Mr. Woods himself was diligent in attempting to bring all this information before the court. He was represented by a lawyer who was struggling because his wife was dying during the course of his trial. And Mr. Woods, you know, essentially had his hands full trying to get his lawyer to even bring in Anthony Jones, the witness who's the subject of this appeal, and was struggling with his lawyer, was not able to get that witness before the court. So he did do his best. He did not have competent counsel. And so it is in the interest of justice to send the case back to allow him to attempt to amend it. I realize your time is just about up, but I'm sure Judge Thomas would give you some additional time. But let me ask you this. Let's just focus on the appeal for a minute. And, you know, I'll be honest with you. I nuded the case, and I read as much as I possibly could, and I looked at the prior oral argument or listened to the prior argument. So I kind of, you know, I understand the position you were taking at the last argument. But let me ask, just let me ask you this. Is there anything else? You probably went back and listened to it as well in preparation for today. So is there anything else that now you've reflected on it that you would like to call to our attention that we should pay particular, you know, focus on more particularly than? If we're just focused on the facts of the appeal. Yes. The cell phone evidence. I know in the last argument we talked a lot about that, and there were a lot of questions about what was going on with Mr. Woods' cell phone while all of these events were taking place. And the court had questions about the voicemail, for example, telephone call, whether that tended to show that the person who had the handset had to have been Mr. Woods. I would point out that the expert that we presented most recently has verified that that call didn't come from Mr. Woods' handset. So I think that is important information. That does tend to support Mr. Woods' position that that didn't impeach his alibi, that the state court wrongly believed that whoever had the phone was using it to call the voicemail, and it must have been him and must have had his password, but that's just not true. And I gather if amendment is not allowed and the SOS is not granted, you still are advocating your original position on the merits. Yes, Your Honor.  Thank you. Okay. Thank you. Good afternoon, Your Honors. Nathan Gutmann, Deputy Attorney General for Respondent. And may it please the Court, I was trying to parse Petitioner's argument in Petitioner's seizing on something that was not the situation in Balbuena, which would be the situation where there had been no final judgment by the district court and a petition is still pending there. In that situation, certainly a petitioner who is seeking to raise new claims doesn't need to go the SOS route. But here, there was a final judgment, and what Balbuena says about that situation, which is our situation, is that 6TB is not a permissible route to raise either new claims or to attack the district court's merits resolution of the existing claim. That's exactly what Petitioner at least is nominally asking to do. So if the SOS petition is not granted, let's just, if we can go to that hypothetical for a minute, and we're looking at the original appeal, because I think we're talking first in these successive arguments about the original appeal, I'm curious about your position on the Jones evidence, the testimony that came in in the exhaustion hearing. Is it your position that the State doesn't get to use that? In the appeal, no. Okay. So I think that's consistent with your briefing. And back in 2016, I think the State's position was that they had urged our court to accept the proffer, which was that, Woods' proffer, that Jones would testify as Woods had represented. Is that still the State's position now? Right. Inasmuch as that proffer is what was before the State court that rejected the claim. Right. Okay. So we're on the same page. And so what's your argument as to that part of the claim, please? As the failure to impeach, IAC claim for failure to impeach Foreman with Jones' prior inconsistent statement. Just going to the merits of that?  Yes. The State court, and I'm not going to go into the merits of that. And I'll assume here that the relevant adjudication is the reasoned Yes, please. Yes, please. decision. The State court reasonably found the petitioner had not met his Strickland prejudice burden based on the two salient aspects of the trial, and that was the victim's identification and petitioner's alibi. The State court reasonably reasoned that the unprecedented prior inconsistent statement evidence wouldn't have changed the jury's evaluation of the victim's credibility because the victim's account of the shooting and his identification of petitioner was materially identical, not identical in all respects, between the statements he gave at the hospital and the statements he gave at trial. And the preliminary hearing. I'll grant you all that. But it is a bit circular. I mean, I appreciate that Foreman was the only one to identify Woods, but that's no small thing. His credibility is key. And so it strikes me as somewhat circular for the court of appeals to say that Jones' testimony wouldn't have made a difference because Foreman was resolute when, in fact, Jones' testimony, the proper at least, was that he was going to say that Foreman hadn't been consistent. So what do we do with that, please? I think the court's, the State court's analysis based on the similarities needs to be read against the background that the specific things that Foreman said in his descriptions of the shooting turned out to be true of petitioner in uniquely probative ways. The State court referred to the other trial evidence. That's what the other trial evidence is. These things turned out to be true of petitioner in a way that is inconsistent with falsely identifying him either just to identify any old person, in which case he would have identified somebody from the first six-pack, or under petitioner's current theory, if he was trying to identify somebody that, falsely identify somebody that he knew well and had a grudge against, he would have just given the police that person's name. What actually happened was he had a limited knowledge of this person from a short prior confrontation where certainly... We don't know. He was at the car wash. He had other confrontations. It's a lot of discrepancies in how long their relationship had been. Between the pre-trial hearing, the trial, I mean, it was not, that part is a little odd and inconsistent. Whether it's material, that's the question, I guess. Sure. Or do you think it's entirely consistent about how long you knew him? I think that it was clarified at trial what Foreman meant by meeting or seeing. He explained that he had had an actual but short confrontation with him a couple weeks before the shooting and that he had just seen him in passing with his girlfriend with the car that he was later shot from at the car wash shortly before the shooting. There was no evidence that in this gang confrontation two weeks before the shooting that petitioner had come up and said, Hi, my name is Rod Travian Woods. If there was any evidence of that, then yes, it would be strange that the victim didn't identify him that way to the police. What do you make of the testimony that he knew that he was a member of a car club? That tends to indicate that he had more knowledge of Woodson than he initially said. No, the confrontation was at a car club event. He explained that that's why he knew that about him. I think even assuming that, or I guess in the abstract, looking at the testimony of Foreman in a vacuum, because that seems to be what petitioner is focusing on the most, I don't think it shows anything unusual. If the court hasn't had a chance yet, I would urge the court to read it through. Yeah, we have, yeah. I think what it shows is that Foreman was a reluctant witness, which is consistent with what we learned about at trial and actually what came out at the evidentiary hearing. So he would often start by basically showing that he didn't want to talk about something. And if he was just asked a little bit more, he would explain. And the specific things that he explained based on his limited knowledge of this person all turned out to be true of petitioner. You've said that twice now, and I want to make sure that we're... Are you referring to the star tattoos? What are you referring to? Exactly. His gang, his car club, his green Camaro, his girlfriend's Malibu, his girlfriend and his particular tattoos all turned out to be true of petitioner. And these are things that he learned from his limited interactions. He knew him through the car club, he had seen him at the car wash where his girlfriend had the car, the Malibu. These things all turned out to be true in a way that if this was a false identification out of a grudge, he would have just... I said it's Rod Travian Woods. I don't see what a false identification would get out of this route where the police had to follow up on one particular detail, go to the car club's website, happen to find the car with the license plate visible. That was registered to petitioner. When they went to find petitioner, he happened to be with exactly the same car that he shot the victim from. This isn't something that was arranged or set up. This played out to be true in a uniquely probative way and it was reasonable for the state court to rely on both that and the fact that the petitioner's alibi was, again, uniquely refuted by the cell evidence. He said he made a call that was to his dad that only he would make at 914 in Ottawa to him, which was a story he had to make up because the phone evidence otherwise penned in his alibi and he got that wrong. His alibi was not credible. Is there any evidence in the record about how long it would have taken to drive from Ontario to Alhambra? I don't think so. The evidence that we have was that from Inglewood to Ontario was about an hour and 45 minutes, but I would point out it's general knowledge to a juror in Los Angeles that Alhambra. Was that evidence put in trial, put before the jurors? What I'm about to say? No, it was a you said you had there was some. The hour 45? Yes. Yes, that was petitioner's own testimony about how long it took him to drive. I am not from Los Angeles, but I think I've got the two points right. What I'm trying to figure out, because I couldn't find in the record any place about how long it would have taken Mr. Woods to drive from the party, I guess, and I think that's Ontario back to Alhambra. That's what I'm looking for. And is that what you meant when you said you couldn't see that in the record? I'm out of time, but I can answer this. There was no evidence because petitioner did not testify that he did that. He testified. Counselor, I've asked a different question. My question is whether the state or anybody else put any evidence in the record about how long that would have taken. No. Thank you. Any further questions? No. Okay. Thank you, Counsel. We'll give you two minutes for rebuttal. Thank you, Your Honor. I'd like to address the consistency of Mr. Foreman's statements because the description we just heard was that he told the police all these details right from the beginning and that it all turned out to be true. That's not what happened. When Mr. Foreman was interviewed by the police, he told them that he thought the person was a guy named DMACC or BMACC. He didn't give them all these details about the green car or the Lanika Fleming car. Wasn't he in the hospital? He was in the hospital. Had he just been shot in the stomach? Correct. We don't know if the reason he didn't give more details was because of that. However, there wasn't any evidence that he gave this detailed statement that matched Mr. Woods. This didn't come out until much later when there was a mention of a green Camaro. There wasn't a clear description of how that came about. Then the officer who was investigating started investigating the green Camaro. That was the whole key. It wasn't all these other details. It was that car. And the officer connected Mr. Woods to the green Camaro and then presented the six-pack to Mr. Foreman. That's how that all evolved. There was not this clear, coherent story that was given by Mr. Foreman to the police that turned out to match Mr. Woods. It's just not how that happened. Opposing counsel's position is that sort of the same thing happened on the other side, which is that the first time your client explained his whereabouts that evening, he didn't mention this alibi evidence about the cell phone and Mr. Smith meeting him halfway back on the freeway. Isn't that correct also? Well, that's my understanding. Mr. Woods did explain that he was not arrested until quite a long time after this incident happened, and most people don't remember the minor details about their activities on a night. Assuming he is innocent, it would be hard to recollect all these details and to know exactly what day they were even talking about. So, you know, there is a rational logic. Correct me if I'm wrong, but I thought he contacted Smith and asked Smith to bring the phone out to him all the way out in Ontario. It is very unclear where they met. Mr. Woods' statement, the only one that was made, they keep saying that he said he picked up the phone in Ontario, but he never said that. He said, I picked it up at an off-ramp that was on the way to Ontario. It's very unclear. Right, and we didn't have anything from Derek Smith until the exhaustion hearing, and we still didn't get his testimony at the exhaustion hearing, but we have a declaration from him, and he describes meeting Mr. Woods at a gas station somewhere in between. Between Inglewood and Ontario. Right. And I think the other data point we have, I don't mean to cut you off, I think the other data point is just Mr. Woods testifying that he thought it took about 15 minutes to get to wherever it was that he met Mr. Smith. Is that right? He did say that. However, he also said that his girlfriend texted him after the fact and said, what is taking you so long? And he did say, I don't remember exactly how long it took. So it's just not clear from the record. Okay. Thank you both for your arguments. This case will be submitted, and then we'll proceed to the SOS petition.
judges: THOMAS, PAEZ, CHRISTEN